UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

                                                    ECF CASE

JEFFREY H. WALDEN, Individually and on
Behalf of All Other Persons Similarly Situated,            14-CV-00112(ER)

                              Plaintiff,

            v.

SANITATION SALVAGE CORP., ANDREW
SQUITIERI, JOHN SQUITIERI, and STEVE
SQUITIERI, Jointly and Severally,

                              Defendants.

------------------------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**


                                    Respectfully submitted,


                                    TRIVELLA & FORTE, LLP
                                    1311 Mamaroneck Avenue, Suite 170
                                    White Plains, New York 10605
                                    By:  Christopher Smith
                                    *Attorneys for the Defendants*
                                    *Sanitation Salvage Corp., Andrew Squitieri,*
                                    *John Squitieri, and Steve Squitieri*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

FACTS and PROCEDURAL HISTORY ................................................................................. 2

JURISDICTION ........................................................................................................................ 4

LEGAL ARGUMENT .............................................................................................................. 5

    *Summary Judgment Standard of Review* ................................................................................ 5

    *There is no Genuine Issue of Fact Requiring Trial Regarding the FLSA Motor Carrier Act*
    *Exemption Applying to the Defendants therefore Summary Judgment Dismissing the*
    *Complaint is Warranted* ........................................................................................................ 6

        **Sanitation Salvage is within the Jurisdiction of the U.S. Department of Transportation**
        .......................................................................................................................................... 10

        **Sanitation Salvage Helpers are "Loaders" within the Meaning of the Motor Carrier**
        **Act** ................................................................................................................................... 10

    *The Court Should Decline to Exercise Supplemental Jurisdiction* ....................................... 13

    *The Court Should Grant Defendants Their Costs and Attorneys' Fees* ................................. 16

CONCLUSION ........................................................................................................................ 16

**TABLE OF AUTHORITIES-Cases**

*Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ........ 5

*Blankenship v. Thurston Motor Lines, Inc.*, 415 F.2d 1193, 19 *Wage & Hour Cas.* (BNA) 167, 61 *Lab. Cas.* (CCH) P 32233 (4th Cir. 1969)................................................................................... 11, 12

*Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir.2011) ................................................................... 5

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357, 108 S. Ct. 614, 623, 98 L. Ed. 2d 720 (1988).......................................................................................................................................... 16

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ................ 5

*Crean v. M. Moran Transp. Lines*, 57 F. Supp. 212 (W.D. N.Y. 1944) ...................................... 11

*Ebert v. Holiday Inn*, 11 CIV. 4102 ER, 2014 WL 349640 (S.D.N.Y. Jan. 31, 2014).................. 5

*Epps v. Weathers*, 49 F. Supp. 2 (S.D. Ga. 1943)....................................................................... 12

*Foremost Dairies, Inc. v. Ivey*, 204 F.2d 186, 23 Lab. Cas. (CCH) P 67573 (5th Cir. 1953) ...... 11

*Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir.1995) ....................... 5

*Graham v. Town & Country*, 865 F.Supp.2d 952, 956 (W.D. Missouri 2011) ................. 9, 10, 12

*Hartnagel v. Norman,* 953 F.2d 394, 395 (8th Cir.1992) .............................................................. 6

*Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir.2008)................................................ 5

*Levinson v. Spector Motor Service*, 330 U.S. 649, 67 S. Ct. 931, 91 L. Ed. 1158 (1947)............. 11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)..................................................................................................................... 5

*McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir.2006)................................................................... 5

*Mitchell v. Overnite Transp. Co.*, 176 F. Supp. 399 (M.D. N.C. 1959) ...................................... 11

*Opelika Royal Crown Bottling Co. v. Goldberg*, 299 F.2d 37, 44 Lab. Cas. (CCH) P 31226 (5th Cir. 1962).................................................................................................................................... 11

*Saenger v. Montefiore Med. Ctr.*, 706 F.Supp.2d 494, 504 (S.D.N.Y.2010) ................................ 5

*SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir.2009) ................................... 5

*Senno v. Elmsford Union Free Sch. Dist.*, 812 F.Supp.2d 454, 467 (S.D.N.Y.2011) ................... 5

*Shaw v. AAA Engineering & Drafting Inc.*, 138 Fed. Appx. 62, 70, 2005 WL 1349964 at 5 (C.A.10 (Okla.) 2005).................................................................................................................. 15

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 727, 86 S. Ct. 1130, 1140, 16 L. Ed. 2d 218 (1966).................................................................................................................................... 15

*Vaughn v. Watkins Motor Lines, Inc.*, 291 F.3d 900, 88 *Fair Empl. Prac. Cas.* (BNA) 1723, 7 *Wage & Hour Cas.* 2d (BNA) 1478, 83 *Empl. Prac. Dec.* (CCH) P 41211, 146 *Lab. Cas.* (CCH) P 34525, 2002 *FED App.* 0189P (6th Cir. 2002).......................................................... 11

*Walling v. Huber & Huber Motor Exp.*, 67 F. Supp. 855 (W.D. Ky. 1946)................................ 11

*Weinstock v. Columbia University*, 224 F.3d 33, 41 (2d Cir.2000).............................................. 6

*Williams v. Smith*, 781 F.2d 319, 323 (2d Cir.1986) ............................................................... 5, 6

**Statutes, Rules and Regulations**

28 U.S.C. § 1367................................................................................................................ 13, 14, 16

28 U.S.C. §1331 ............................................................................................................................ 14

29 U.S.C. §213............................................................................................................................... 1

NYLL § 195.1 .................................................................................................................. 1, 4, 14, 16

Fed.R.Civ.P. 56.............................................................................................................................. 5

29 C.F.R. § 782.5(a)...................................................................................................................... 11

29 C.F.R. § 782.5(b)...................................................................................................................... 11

## PRELIMINARY STATEMENT

Defendants Sanitation Salvage Corp., Andrew Squitieri, John Squitieri, and Steve Squitieri (hereinafter collectively referred to as either "Sanitation Salvage" or "Defendants") submit this Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint dated January 6, 2014 ("Complaint") with prejudice and for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP"). Defendants also seek a judgment awarding the Defendants the costs and attorneys' fees associated with filing this motion and defending this action.

The Court, respectfully, should grant Defendants' motion since: 1. No genuine issue of fact requiring trial exists regarding the Defendants' eligibility for the Motor Carrier Act exemption to the Fair Labor Standards Act overtime requirements set forth in Section 13(b)(1) of the Fair Labor Standards Act (29 U.S.C. §213(b)(1)) and this exemption warrants dismissal of the first and second overtime pay causes of action; 2. The Court should decline to exercise supplemental jurisdiction over the New York State third cause of action for alleged violation of NYLL § 195.1 for alleged failure to provide a notice and acknowledgment of pay rate to Plaintiffs since: a. State court provides an adequate venue for resolution of this cause of action; 2. federal courts are courts of limited jurisdiction and the third causes of action does not "arise under" federal law and can be resolved solely by reference to New York State Law; 3. the issues relating to employee notice raised in the state claims do not warrant the court in its discretion to exercise supplemental jurisdiction; and 4. Plaintiff in February 2012 signed for and received his NYLL § 195.1 notice and acknowledgment of pay rate.

1

## FACTS and PROCEDURAL HISTORY

The facts are as stated in the Declaration of Steve Squitieri dated April 2014[1], the President of the Defendant Sanitation Salvage Corp., and Sanitation Salvage Corp. employees/helpers Mr. Christopher Bourke and Mr. Orrett Ewen. They are incorporated by reference herein.

Sanitation Salvage is a trash removal service located in the Bronx, New York.  It is in the business of removing garbage and cardboard from commercial establishments throughout New York City and Westchester County.  Significantly, Sanitation Salvage ships the materials it collects to various locations throughout the United States and the World.   Sanitation's reach is global. The trash it collects in New York is ultimately disposed of out of state and internationally.  In an average month, Sanitation Salvage collects between 1,200 to 1,300 tons of cardboard from its customers.  The cardboard is then shipped to one of two entities, Action Carting Environment Services or Paper Services, Inc.  From there, the cardboard is transported abroad to either India or China.  Therefore, the entirety of the cardboard that Sanitation Salvage collects in New York is subsequently transported internationally.

In addition to cardboard, Sanitation Salvage collects approximately 7,000 tons of garbage in a given month.  After collection, Sanitation delivers the garbage to local transfer stations.  The transfer stations, in turn, ship a majority of the 7,000 tons out of New York State, with nearly 3,700 tons going to Ohio, while 3,300 tons go to Waterloo, New York.  Based upon these figures, the majority of the garbage that Sanitation Salvage collects in New York is thereafter transported out of state.  In short, Sanitation Salvage is actively engaged in the transport of garbage and cardboard which is ultimately destined for locations in other states and countries.

---

[1] Hereinafter the "Squitieri Declaration".

2

Sanitation Salvage Corp.'s truck fleet consists of over 25 trucks, including "packer" and "roll-off" trucks. The packer trucks are manned by a driver and helper that collect the garbage and are responsible for the safe operation of the truck.

As set forth in the Affidavits of the helpers annexed to Defendants' moving papers, helpers working on Sanitation Salvage Corp. packer trucks perform a variety of diverse activities as part of their employment continuously during the work route directly affecting the safety of operation of those motor vehicles. Examples given are full discretion to reject a load if it is a hazard to the truck and crew, actively managing the safe operation of the packer winch, working controls such as the driver warning buzzer and providing hand signals to advise the driver of safety issues occurring during the route, participating in truck inspections before and after the truck route, and reporting to the driver and management any unsafe conditions arising during the work day.

The Plaintiff worked for several years for Sanitation Salvage Corp. as a helper on a Sanitation Salvage Corp. packer garbage truck, operating a regular daily route in Manhattan until he was terminated for cause. The Plaintiff as a helper was required by Sanitation Salvage Corp. to and did perform the safety procedures set forth in the Declaration and Affidavits attached to these moving papers that other helpers also performed during his work shift. As a helper Plaintiff was required to establish the safety of the pickup and throw it in the packer, direct the driver and notify him during the route of safety issues, reject hazardous loads, and monitor the truck's equipment and notify the driver of any malfunction in the equipment. The Plaintiff was also required to maintain the safe operation of the truck winch and packer control mechanism.

After the Plaintiff was terminated from Sanitation Salvage Corp. employment for cause the Plaintiff, on behalf of himself and alleged "other similarly situated current and former

employees of the Defendants and those who elect to opt into this action under the Fair Labor

Standards Act ("FLSA")", filed this class and collective action containing three causes of action.

The first cause of action alleges, "Defendants had a policy and practice of refusing to pay

overtime compensation to their employees for all of their hours worked in excess of forty (40)

hours per workweek" violating the Fair Labor Standards Act. Complaint, ¶ 66.  The second cause

of action alleges "Defendants have willfully violated the New York Labor Law by knowingly

and intentionally failing to pay the Rule 23 Class Members the correct amount of overtime

wages." Complaint, ¶ 81. The third cause of action alleges, "Defendants have willfully failed to

supply Plaintiff Walden and the Rule 23 Class Members with the required Notice and

Acknowledgement of Pay Rate and Payday under NYLL 195.l."  Complaint, ¶ 84. Defendants

filed an answer to the Complaint and now move for summary judgment dismissing the

Complaint since the Motor Carrier Act exemption justifies dismissing the Fair Labor Standards

Act and New York Labor Law first and second causes of action and the Court should decline to

exercise supplemental jurisdiction over the third cause of action alleging violation of New York

Labor Law § 195.1 notice provisions.

## <u>JURISDICTION</u>

The Complaint seeks to establish a class and collective action and contains a first cause

of action for violation of the Fair Labor Standards Act and two state causes of action.  If the

Court grants Defendants' motion to dismiss the Fair Labor Standards Act first cause of action

then the Court does not have original jurisdiction over the case and controversy and should not in

its discretion exercise supplemental jurisdiction over the two state law claims.  Upon information

and belief, the Court does not have diversity jurisdiction.

4

# LEGAL ARGUMENT

## *Summary Judgment Standard of Review*

This Court has previously stated the standard of review for summary judgment in the Fair

Labor Standards Act context:

> Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed.R.Civ.P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.,* 812 F.Supp.2d 454, 467 (S.D.N.Y.2011) (*citing SCR Joint Venture L.P. v. Warshawsky,* 559 F.3d 133, 137 (2d Cir.2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Id.* The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Med. Ctr.,* 706 F.Supp.2d 494, 504 (S.D.N.Y.2010) (internal quotation marks omitted) (*quoting Jaramillo v. Weyerhaeuser Co.,* 536 F.3d 140, 145 (2d Cir.2008)).
>
> In deciding a motion for summary judgment, the Court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.' "*Brod v. Omya, Inc.,* 653 F.3d 156, 164 (2d Cir.2011) (*quoting Williams v. R.H. Donnelley, Corp.,* 368 F.3d 123, 126 (2d Cir.2004)). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise. *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir.1995). The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts." *McClellan v. Smith,* 439 F.3d 137, 144 (2d Cir.2006) (internal quotation marks omitted) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno,* 812 F.Supp.2d at 467–68 (*citing Anderson v. Liberty Lobby,* 477 U.S. 242, 256–57, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

*Ebert v. Holiday Inn*, 11 CIV. 4102 ER, 2014 WL 349640 (S.D.N.Y. Jan. 31, 2014) (Ramos, J.).

The moving party bears, "the initial responsibility of informing the district court of the basis for

its motion and identifying those portions of the record which show a lack of a genuine issue."

*Hartnagel v. Norman,* 953 F.2d 394, 395 (8th Cir.1992). However, when a summary judgment

motion is made and supported by evidence as provided in Rule 56(c), the nonmoving party may

not rest on mere allegations or denials in its pleadings but "must set forth specific facts showing

that there is a genuine issue for trial." *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir.1986)

(*quoting* Fed.R.Civ.P. 56(e)). Establishing such facts requires going beyond the unsupported

allegations of the pleadings, as the moment has arrived "'to put up or shut up.'" *Weinstock v.*

*Columbia University,* 224 F.3d 33, 41 (2d Cir.2000) (citation omitted).


***There is no Genuine Issue of Fact Requiring Trial Regarding the FLSA Motor Carrier Act Exemption Applying to the Defendants therefore Summary Judgment Dismissing the Complaint is Warranted***

Under the Fair Labor Standards Act, employees who work more than 40 hours in a work

week are entitled to compensation for employment for excess hours at a rate of not less than one

and one-half times the employee's regular rate of pay. 28 U.S.C. § 207(a) (1). There are

exceptions to the "time-and-a-half" overtime provision of the Fair Labor Standards Act,

including an exemption for "any employee with respect to whom the Secretary of Transportation

has power to establish qualifications and maximum hours of service pursuant to the provisions of

section 31502 of Title 49." 29 U.S.C. § 213(b) (1). This exemption is known as the Motor

Carrier Act exemption.

Here, there is no genuine issue of fact requiring trial that the Defendants are covered by

the Motor Carrier Act exemption during all relevant time periods set forth in the Complaint.  The

declaration of Sanitation Salvage Corp.'s officer Mr. Steven Squitieri and the affidavits of

Sanitation Salvage Corp. helper employees establishes that the helpers for the Sanitation Salvage

Corp. garbage packers are "loaders" as that term is defined in the Motor Carrier Act, they perform regular continuous duties during their work tour affecting the safety of operation of the garbage trucks, and the USDOT exercises power over Sanitation Salvage Corp. via regulation and regular audits of Sanitation Salvage Corp.'s business records. Since there is no genuine issue of fact requiring trial as to these issues the Court, respectfully, should grant the Defendants' motion and dismiss the Complaint.

The Department of Transportation ("USDOT") has authority to establish requirements for:

> (1) Qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier; and
> (2) Qualifications and maximum hours of service of employees of, and standards of equipment of, a motor private carrier, when needed to promote safety of operation.

49 U.S.C. § 31502(b) (1)-(2). A "motor carrier" is a person or company "providing commercial motor vehicle (as defined in section 31132) transportation for compensation." 49 U.S.C. § 13102(14). Application of The Motor Carrier Act exemption depends on whether the employer transports materials that are subject to the jurisdiction of the Secretary of Transportation and whether the class of work that the employee performs affects the safety of operation of the motor vehicle.[2] Jurisdiction of the Secretary of Transportation depends on transporting the materials on public highways in interstate or foreign commerce.

---

[2] 29 C.F.R. § 782.2 provides, in pertinent part:

§ 782.2 Requirements for exemption in general.
(a) The exemption of an employee from the hours provisions of the Fair Labor Standards Act under section 13(b)(1) depends both on the class to which his employer belongs and on the class of work involved in the employee's job. The power of the Secretary of Transportation to establish maximum hours and qualifications of service of employees, on which exemption

The MCE is contained within Section 13(b) (1) of the FLSA and specifically provides an overtime exemption for employees who fall under the Secretary of Transportation's authority to establish qualifications and maximum hours of service pursuant to Section 204 of the Motor Carrier Act of 1935.  This statutory exemption applies to drivers, driver's helpers, loaders, and mechanics employed by a common carrier whose activities directly affect the safety of operation of motor vehicles in the transportation on the public highways of passengers or property.

The Motor Carrier Act exemption also warrants dismissal of the second cause of action for overtime pay pursuant to New York Labor Law.  While the Fair Labor Standards Act does not prevent states from enacting overtime laws and regulations that are more favorable to employees than the Fair Labor Standards Act[3], New York regulations recognize the Motor Carrier Act exemption present in the Fair Labor Standards Act applies to New York Labor Law. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 reads (emphasis added):

> An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and **subject to the exemptions** of sections 7 and **13** [,] of 29 U.S.C. 201 et seq., the Fair Labor Standards Act of 1938, as amended; provided, however, that the exemptions set forth in section 13(a)(2) and (4) shall not apply. In addition, an employer shall pay employees subject to the exemptions of section 13 of the Fair Labor Standards Act, as amended, except employees subject to section 13(a)(2) and (4) of such act, overtime at a wage rate of one and one-half times the basic minimum hourly rate.

---

depends, extends to those classes of employees and those only who: (1) Are employed by carriers whose transportation of passengers or property by motor vehicle is subject to his jurisdiction under section 204 of the Motor Carrier Act (*Boutell* v. *Walling,* 327 U.S. 463; *Walling* v. *Casale,* 51 F. Supp. 520; and see Ex parte Nos. MC-2 and MC-3, in the Matter of Maximum Hours of Service of Motor Carrier Employees, 28 M.C.C. 125, 132), and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act.

[3] 29 U.S.C. § 218; *Manliquez v Joseph*, 226 F. Supp. 2d 377 (E.D.N.Y. 2002).

If the Motor Carrier Act exemption applies then the Second Cause of Action is subject to dismissal. There is no genuine issue of fact, the Complaint does not allege, and the declaration in support of this motion makes clear that helper employees are paid in excess of the minimum overtime compensation required under New York Law.

Sanitation Salvage Corp. employees fall squarely under the MCE based upon the plain terms of the statute and well-established case law. *Graham v. Town & Country Disposal of Western Missouri*, 865 F.Supp.2d 952 (W.D. Mo. 2011) is instructive on the issue. In *Graham* the Court considered whether the defendant, a trash collection business, was exempt under the Motor Carrier Act from the FLSA's overtime requirements. The Court explained that an employer claiming the Motor Carrier Act exemption under the FLSA must meet three criteria:

1) That it is an employer whose transportation of passengers or property by motor vehicle is under the jurisdiction of the Secretary of Transportation;
2) That the employee is a driver, driver's helper, loader or mechanic; and
3) That the employee engages in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce.

*Graham v. Town & Country*, 865 F.Supp.2d 952, 956 (W.D. Missouri 2011). In considering the first criteria of whether the Secretary of Transportation had jurisdiction over defendant's transportation of garbage, the *Graham* Court looked to such things as whether defendant's trucks were registered with the Department of Transportation ("USDOT"), whether the defendant was subject to audits and inspections by the USDOT, and whether its employees complied with the USDOT's pre-trip and post-trip inspection requirements. The Court affirmatively found that "the Secretary clearly appears to be exercising jurisdiction over [defendant's] trash collection business as it regulates [defendant's] operations from the registration to the inspection process." *Graham*, 865 F.Supp.2d at 956. The Court further explained that the defendant satisfies the

9

"transportation of property" requirement as that term reasonably includes trash.  *Id*. at 958.  In *Graham*, the Court easily found that the plaintiffs were "loaders" or "driver's helpers" as defined by the Motor Carrier Act.  In *Graham* the Court looked to the third criteria of whether the loaders and helpers were engaged in activities directly affecting the safety of operations of motor vehicles within interstate commerce.  *Id.* at 959.  The Court found that because the employees exercised their judgment and discretion in determining whether items left for pickup were acceptable for loading into the trash collection trucks, and then placed, distributed and secured that trash in the vehicle, the employees were engaged in activities "directly affecting the safety of operations of motor vehicles within interstate commerce." *Id.* at 959.

**Sanitation Salvage is within the Jurisdiction of the U.S. Department of Transportation**

Sanitation Salvage, like the defendant in the *Graham* case, satisfies all three criteria necessary to claim the Motor Carrier Act exemption under the FLSA.  Sanitation Salvage falls under the jurisdiction of the Secretary of Transportation, as it maintains trucks registered with the USDOT and the trucks show the USDOT number. Sanitation Salvage Corp. has been the subject of two USDOT audits recently and its helper employees are required to conduct pre-trip and post-trip inspections pursuant to USDOT regulations. Sanitation Salvage Corp. keeps maintenance and other records pursuant to USDOT requirements. *See* Squitieri Declaration.

**Sanitation Salvage Helpers are "Loaders" within the Meaning of the Motor Carrier Act**

A "loader" for purposes of the Motor Carrier Act exemption, is an employee whose duties consist, among other things, in seeing to the proper loading of a motor vehicle so that it may be safely operated on the highways, with responsibility for exercising judgment in planning and building a balanced load, or in placing, distributing, or securing freight in such a manner that

the safe operation of the vehicle will not be jeopardized[4]. A "loader" is sometimes called a "dockman", "stacker," or, as with Sanitation Salvage Corp. packer truck workers, a "helper." 29 C.F.R. § 782.5(a).  Other persons, such as checkers, foremen, or other supervisors who plan and immediately direct proper loading may also come within the exemption as partial-duty loaders. 29 C.F.R. § 782.5(b).  In a number of cases, the federal courts have held employees who engaged in both loading and unloading activities to be "loaders." These have included:

1. "Callers" employed by a motor freight carrier. *Mitchell v. Overnite Transp. Co.*, 176 F. Supp. 399 (M.D. N.C. 1959).
2. "Wheelers" at a trucking terminal. *Crean v. M. Moran Transp. Lines*, 57 F. Supp. 212 (W.D. N.Y. 1944).
3. Dockmen who also worked at wheeling. *Walling v. Huber & Huber Motor Exp.*, 67 F. Supp. 855 (W.D. Ky. 1946).
4. Dockworkers. *Blankenship v. Thurston Motor Lines, Inc.*, 415 F.2d 1193, 19 *Wage & Hour Cas.* (BNA) 167, 61 *Lab. Cas.* (CCH) P 32233 (4th Cir. 1969); *Vaughn v. Watkins Motor Lines, Inc.*, 291 F.3d 900, 88 *Fair Empl. Prac. Cas.* (BNA) 1723, 7 *Wage & Hour Cas.* 2d (BNA) 1478, 83 *Empl. Prac. Dec.* (CCH) P 41211, 146 *Lab. Cas.* (CCH) P 34525, 2002 *FED App.* 0189P (6th Cir. 2002).
5. Employees who rode on the trucks at all times and performed a number of functions. *Opelika Royal Crown Bottling Co. v. Goldberg*, 299 F.2d 37, 44 Lab. Cas. (CCH) P 31226 (5th Cir. 1962).

The following employees have also been recognized as "loaders" for purposes of the exemption:

1. A dairy company's employee in charge of removing cans of condensed cream and milk from refrigerated boxcars and loading them on the employer's truck for transportation to the plant three miles away, inasmuch as the short haul from the railroad to the plant constituted a continuity of movement of the goods in interstate commerce until they reached the plant for which they were intended. *Foremost Dairies, Inc. v. Ivey*, 204 F.2d 186, 23 Lab. Cas. (CCH) P 67573 (5th Cir. 1953).
2. A freight checker or terminal foreman, a substantial part of whose activities consisted of doing, or immediately directing, the work of one or more loaders, even though the rest of his activities did not affect safety of operations. *Levinson v. Spector Motor Service*, 330 U.S. 649, 67 S. Ct. 931, 91 L. Ed. 1158 (1947).
3. Employees who loaded pipe on trucks engaged in interstate commerce. *Mitchell v. Hill & Hill Truck Line, Inc.*, 183 F. Supp. 463 (S.D. Tex. 1960).

---

[4] 3 *Emp. Coord. Compensation* § 6:22.

4.  Employees who crated and packed goods for shipment in interstate commerce. *Epps v. Weathers*, 49 F. Supp. 2 (S.D. Ga. 1943).

At least one district court has already held that garbage "throwers" who loaded garbage trucks that hauled trash over interstate lines were considered loaders where they exercised discretion in deciding whether to pick up items of trash or leave them at the curb based on safety reasons. *Graham v. Town & Country Disposal of Western Missouri, Inc.*, 865 F.Supp.2d 952, 18 Wage & Hour Cas. 2d (BNA) 230, 2011 WL 4378005 (W.D. Mo. 2011). One district court opined that in including "loaders" within the jurisdiction of the DOT Secretary, no distinction was made with respect either to the extent or degree of supervision, or to the independent decision or discretion which a loader exercises. The court reasoned that, therefore, even if loaders are closely supervised and bear no independent responsibility for safe loading, they should qualify for the exemption. *Blankenship v. Thurston Motor Lines, Inc.*, 415 F.2d 1193, 19 Wage & Hour Cas. (BNA) 167, 61 Lab. Cas. (CCH) ¶32233 (4th Cir. 1969).

Utilizing the criteria in the above case law and regulations, Sanitation Salvage Corp. helpers such as Plaintiff are "loaders" as that term is defined by the Motor Carrier Act. Sanitation Salvage employs helpers such as Plaintiff whose primary regular work duties directly impact the safety of operation of the garbage trucks on public highways in interstate and foreign commerce and therefore meet the criteria of "loaders" under the Motor Carrier Act.  *See* the Squitieri Declaration and the Affidavits of helpers Messrs. Bourke and Ewen attached to these moving papers. Sanitation Salvage Corp. helpers exercise independent discretion and judgment during truck routes in deciding whether to load the garbage left for pickup, how to properly place the items in the trucks, the operation of the packer winch and packer controls and driver emergency buzzer, and screening pickups for hazardous material. When performing these functions relating

to the safe operation of the packer truck on the highway the helpers are not directly supervised by the driver or any other Sanitation Salvage Corp. representative. The safety procedures of the helpers directly affect other highway driver's and pedestrian's safety as well as the safety of the truck driving crew.

Since Plaintiff and Sanitation Salvage Corp. helpers are "loaders" within the meaning of the Motor Carrier Act, and during their work day are continuously engaged directly in activities affecting the safety of the fleet operation on public highways, as a matter of law Plaintiff and helpers Plaintiff alleges are similarly situated have no viable Fair Labor Standards Act or New York Labor Law overtime claim because Sanitation Salvage Corp. is exempt from complying with Fair Labor Standards Act or New York Labor Law overtime pay requirements.

### *The Court Should Decline to Exercise Supplemental Jurisdiction*

If the Court dismisses the first Fair Labor Standards Act cause of action since there are no other federal causes of action providing this Court with original jurisdiction the Court in its discretion should decline to exercise supplemental jurisdiction over the remaining state law second and third causes of action.  28 U.S.C. § 1367, the statute authorizing federal courts to exercise supplemental jurisdiction over some but not all state law causes of action reads, in pertinent part:

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.
> (b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have

supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367.  The Complaint, ¶ 3 alleges federal subject matter jurisdiction pursuant to 28 U.S.C. §§1331, 1337, 1343 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. The state law third cause of action against Defendants alleges putative plaintiffs exist that "did not receive the required Notice and Acknowledgment of Pay Rate and Payday under NYLL § 195.1" (Complaint, ¶ 22).

There is no jurisdiction under 28 U.S.C. § 1367 as the facts to be determined in deciding the first and second causes of action (*e.g.* whether Jeffrey Walden and other putative Plaintiffs were paid overtime in compliance with the Fair Labor Standards Act and New York Labor Law), are different and do not arise from the same common nucleus of fact as the facts that will be determined in deciding the third cause of action (*e.g.* whether Sanitation Salvage Corp. employees received notices pursuant to the requirements of New York Labor Law § 195.1).  The Tenth Circuit Court of Appeals opined:

> We also conclude that it would have been an abuse of discretion for the district court to have exercised supplemental jurisdiction under 28 U.S.C. § 1367(a) over the state-law claims … As recognized by the Supreme Court in *Peacock,* Congress enacted § 1367 in order to "codif[y] much of the common-

> law doctrine of ancillary jurisdiction as part of 'supplemental jurisdiction.'
> " *Peacock*, 516 U.S. at 354 n. 5. In particular, § 1367(a) codified the principle that
> "[t]he federal courts' original jurisdiction over federal questions carries with it
> jurisdiction over state law claims that derive from a common nucleus of operative
> fact, such that the relationship between [the federal] claim and the state claim
> permits the conclusion that the entire action before the court comprises just one
> constitutional case." *Gold,* 159 F.3d at 1310. Section 1367(c) also authorizes the
> district courts to decline supplemental jurisdiction in certain specified
> circumstances, however, and one of the circumstances is where "the [state] claim
> substantially predominates over the claim or claims over which the district court
> has jurisdiction." 28 U.S.C. § 1367(c) (2).

*Shaw v. AAA Engineering & Drafting Inc.*, 138 Fed. Appx. 62, 70, 2005 WL 1349964 at

5 (C.A.10 (Okla.) 2005) (ellipsis added).  In the instant action if the Court dismisses the first and

second causes of action there is no "primary lawsuit" that can provide an independent basis for

federal jurisdiction and the state third cause of action predominates. *Peacock*, 516 U.S. at 355.

The third cause of action is strictly a New York state law claim which is not interwoven

with the overtime claims and does not arise out of the same nucleus of fact as it does not arise

out of allegations of failure to pay overtime to employees working in excess of forty hours in a

work week. The cause of action for failure to provide the pay notice does not arise from the same

controversy of whether putative plaintiffs received statutory overtime.  "Once it appears that a

state claim constitutes the real body of a case, to which the federal claim is only an appendage,

the state claim may fairly be dismissed."  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715,

727, 86 S. Ct. 1130, 1140, 16 L. Ed. 2d 218 (1966); 28 U.S.C. § 1367(c).

No prejudice to Plaintiff or putative plaintiffs results from declining to exercise

supplemental jurisdiction. The federal court can decline supplemental jurisdiction over the state

causes of action, either by dismissing the second and third causes of action without prejudice or

remanding the causes of action to state court. Declining to exercise supplemental jurisdiction

does not prejudice the Plaintiff as he is free to file his third cause of action in state court. 28 U.S.C. § 1367 provides a thirty day statute of limitations extension from date of dismissal, so Plaintiff cannot claim dismissal of the federal action results in prejudice.  Finally, considerations of judicial economy, convenience, fairness and comity warrant dismissal of the federal court action and resolution of the New York State pay day notice cause of action in state court.  "The discretion to remand enables district courts to deal with cases involving pendent claims in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357, 108 S. Ct. 614, 623, 98 L. Ed. 2d 720 (1988).  The Court should also decline to exercise supplemental jurisdiction as the Plaintiff is not a proper party to represent any putative Plaintiff that did not receive a New York Labor Law § 195.1 pay day notice and has no incentive to represent these putative Plaintiffs because Plaintiff received and signed for the New York Labor Law § 195.1 pay day notice. *See* Declaration of Steve Squitieri at Exhibit C.

### *The Court Should Grant Defendants Their Costs and Attorneys' Fees*

If the Court grants Defendants summary judgment dismissing the Complaint, Defendants request the Court grant Defendants their attorneys' fees and costs in filing this motion and in this action, as the Plaintiff did not make a reasonable inquiry as to whether Defendants were exempt from the Fair Labor Standards Act and New York Labor Law  overtime provisions prior to filing the instant suit and did not withdraw the lawsuit when Defendants filed their pre-motion letter to the Court explaining why Defendants are covered by the Motor Carrier Act exemption.

### <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully submit the Court should grant the

Defendants' motion in its entirety, dismiss the Complaint with prejudice and award Defendants judgment for their attorneys' fees and costs and such other and further relief as the Court deems just and proper.

Dated: White Plains, New York
      April 24, 2014           _____*/s/ Christopher A. Smith* _____
                                 TRIVELLA & FORTE, LLP
                                 *Attorneys for the Defendants*
                                 By: Christopher A. Smith (CS 9014)
                  `            1311 Mamaroneck Avenue, Suite 170
                                 White Plains, New York 10605
                                 Telephone No. (914) 949 - 9075
                                 Facsimile No. (914) 949 – 4752
                                 111csmith111@gmail.com