E43BWALC                        Conference

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

JEFFREY H. WALDEN,

          Plaintiff,

     v.                                 14 CV 112 (ER)

SANITATION SALVAGE CORP., et
al,

          Defendants.
------------------------------x
                                        New York, N.Y.
                                        April 3, 2014
                                        2:03 p.m.

Before:

               HON. EDGARDO RAMOS,

                                      District Judge

               APPEARANCES

DOUGLAS B. LIPSKY
     Attorney for Plaintiff

CHRISTOPHER A. SMITH
     Attorney for Defendants

1              (In open court)
2              THE DEPUTY CLERK:  In the matter of *Jeffrey Walden v.*
3     *Sanitation Salvage Corporation, et al*.
4              Counsel, please state your names for the record.
5              MR. LIPSKY:  Good afternoon, your Honor.  Brian Lipsky
6     on behalf of the plaintiff.
7              MR. SMITH:  Good afternoon, your Honor.  Christopher
8     Smith for the defendants.
9              THE COURT:  And good afternoon to you.  This is the
10    first time that this matter is on before me.
11             Mr. Lipsky, why don't you give me the lay of the land.
12             MR. LIPSKY:  Thank you, your Honor.  This is a
13    wage-an-hour case under the Fair Labor Standards Act and the
14    New York Labor Law.  Plaintiff, Jeffrey Walden, worked for the
15    defendants as a helper.  The defendants have a sanitation
16    company that picks up garbage and recycling materials
17    throughout the five boroughs and Westchester.  As a loader, his
18    duties are what you might imagine them.  He picks up the
19    garbage from the street, tosses it into the back of the truck,
20    and he does that on a very long schedule.
21             THE COURT:  Is this garbage and recyclables or garbage
22    or recyclables?
23             MR. LIPSKY:  And.  And recyclables, your Honor.
24             THE COURT:  Okay.
25             MR. LIPSKY:  In doing so, he is not adhering to any

1  specific company guidelines of only collect this type of
2  garbage, don't collect this type of garbage.  His instructions
3  are as broad as possible:  Pick up everything, throw everything
4  into the truck.
5           THE COURT:  But does he have any responsibility with
6  respect to separating out the recyclables from the garbage?
7           MR. LIPSKY:  It all goes into the truck all at once.
8           THE COURT:  One truck.
9           MR. LIPSKY:  One truck.
10          THE COURT:  Okay.
11          MR. LIPSKY:  And in doing that, he works five 16-hour
12 shifts per week.  And they're working from about I think it's
13 11 p.m. to 3 p.m.  And for performing those duties, they were
14 paid $14.50 per hour, but were capped at paying 50 hours.  They
15 were normally working 80 hours per week, so they were not
16 compensated for an extra 30 hours per week.  For the hours that
17 they worked over 40, so that the ten hours over 40 to the 50
18 cap, they were paid overtime compensation.
19          THE COURT:  They were.
20          MR. LIPSKY:  They were.
21          So the claim under both the Fair Labor Standards Act
22 and the New York Labor Law is for that extra 30 hours that they
23 were not paid for per week.
24          In addition to that, there's another claim under the
25 New York Labor Law for defendants' recordkeeping violations.

1   Namely, under the Wage Theft Prevention Act, which amended the
2   New York Labor Law in 2011, every employer is required to give
3   its employees a statement of wage during one of three
4   occurrences:  The time of hire, any rate change, and between
5   January 1 and February 1 of every year.  Failure to do so is a
6   $50 penalty per week per employee capped at $2,500 per
7   employee.  Defendants failed to provide those notices to
8   plaintiff and the other would-be class members.
9            THE COURT:  Okay.  How big is your putative class?
10           MR. LIPSKY:  Based on our understanding, it's several
11  hundred individuals, your Honor.  On any given day there's-- I
12  believe we have that there's about 40 trucks out.
13           THE COURT:  Okay.
14           MR. LIPSKY:  And considering the hours and the work
15  involved, Mr. Walden, through his own eyes, saw a rather high
16  turnover rate of just people coming in, people going out.  So
17  through that our estimate is that it's in the hundreds.
18           THE COURT:  Okay.  But hundreds during the time
19  period?
20           MR. LIPSKY:  Going back for the six-year statute of
21  limitations under the New York Labor Law.
22           THE COURT:  Okay.
23           MR. LIPSKY:  Within the three years under the Fair
24  Labor Standards Act, we would put that estimate to be maybe
25  between one to two hundred putative collective action members,

1     your Honor.
2              THE COURT:  Okay.  But, in any event, today the
3     company has in excess of 15 employees?
4              MR. LIPSKY:  That's correct, your Honor.
5              THE COURT:  Okay.  And how long has Mr. Walden been
6     employed by them?
7              MR. LIPSKY:  Mr. Walden worked there for, I believe, a
8     year and a half.  Sorry, a little more.  From June 2011 to
9     February 2013.
10             THE COURT:  And he's no longer there?
11             MR. LIPSKY:  That's correct, your Honor.
12             THE COURT:  Okay.  Okay.  Mr. Smith, did you want to
13    give me any additional color concerning this case?
14             MR. SMITH:  Yes, Judge.  Just that-- and we set it
15    forth in our letter to you, so I won't belabor the issue.  But
16    they are required to conduct pre- and post-trip inspections
17    pursuant to DOT regulations, and the trucks are registered with
18    the DOT.  So we think the motor carrier exemption applies.
19             THE COURT:  What does that inspection consist of?
20             MR. SMITH:  It's my understanding that they have to
21    check the actual containers and they also have to check -- as
22    things are coming into the truck, they have to check what type
23    of material is coming in.
24             There's two types-- they do recycling for cardboard.
25    It's not so much a check of that as it is of actual garbage.

1    And then the vehicle itself --
2             THE COURT:  I'm sorry.  So there's some garbage that
3    is laid out on the sidewalk that they conceivably can leave?
4             MR. SMITH:  If they believe there was a safety issue,
5    yes.
6             THE COURT:  And then that is an item of discretion
7    that you believe brings these employees under the ambit of the
8    motor carrier act?
9             MR. SMITH:  Well, I think they meet the criteria-- we
10   cited this case *Graham*, Judge, and I think that they meet the
11   criteria here of trash collection business as it regulates
12   defendants' operations for the registration --
13            THE COURT:  I'm sorry, can you slow down?
14            MR. SMITH:  Yes, I'm sorry.  So in the *Graham* case,
15   the Court found that "The secretary clearly appears to be
16   exercising jurisdiction over defendants' trash collection
17   business as it regulates defendants' operations from the
18   registration to the inspection process."
19            So the fact that the Department of Transportation
20   regulates their entire-- really soup to nuts, their entire
21   operation, would place them in the exemption, or so we would
22   argue.
23            THE COURT:  Okay.  And the *Graham* case involved
24   workers like Mr. Walden?
25            MR. SMITH:  Yes, Judge.

1                THE COURT:  Okay.  Anything else?

2                MR. SMITH:  Just from a procedural standpoint, we

3      thought-- of course it's up to your discretion, but we thought

4      it would make sense to have this motor carrier exemption issue

5      resolved, bifurcated maybe.  If it requires limited discovery,

6      I don't know if he's going to make a Rule 56(F) application for

7      discovery, but we certainly could do that.  And this way it

8      would spare my client the expense and time were the Court to

9      find that the motor carrier exemption applies, the cost of what

10     your Honor is full aware of with respect to a class action

11     actually being served.

12               Thank you.

13               THE COURT:  Okay.  So did you have this conversation

14     with Mr. Lipsky concerning procedurally how we should --

15               MR. SMITH:  You know, maybe it's my fault.  I didn't.

16     I mean, we had it sort of through our correspondence.  And, no,

17     I should meet and confer a little more on this issue.

18               THE COURT:  Okay.  Yes, because, Mr. Lipsky, it seems

19     to me to make sense that if this is a matter that's going to be

20     disposed of on the basis of this statute and if it's a matter

21     of just making a determination that they come within the

22     definition, it would seem to me we could do that fairly easily.

23     And, therefore, why don't we do that in the first instance.

24               MR. LIPSKY:  I agree, your Honor, as a matter of

25     efficiency that does make sense.  However, I have a concern of

1  the statute of limitations is continuing to run on the
2  putative--
3           THE COURT:  No, absolutely.  Absolutely.
4           MR. LIPSKY:  So plaintiffs would have no objection to
5  that provided defendants stipulate to toll the statute of
6  limitations for the claims under the Fair Labor Standards Act
7  while the summary judgment motion is litigated.  Otherwise,
8  it's plaintiff's position that the motion to conditionally
9  certify the collective action should move forward.
10          THE COURT:  Right.  Yes.
11          Mr. Smith, that makes sense to me.  If we're not going
12 to toll the statute, why shouldn't we let them go forward with
13 their claims so that they don't lose --
14          MR. SMITH:  Yes.  Mr. Lipsky -- certainly I understand
15 his argument.  I'd just like to take it under advisement for a
16 day.
17          THE COURT:  Okay.  Absolutely.  Yes.  Why don't you
18 guys talk.  Because it seems to me to make sense that if this
19 is a matter that's not going to be before me because of this
20 statute, let's make that determination early on so that we're
21 not wasting time going forward.  But Mr. Lipsky is certainly
22 entitled to protect whatever claims he may have under the
23 statute as it currently stands.
24          So that it makes sense to me, Mr. Smith, that you
25 would agree to toll the statute until this issue is resolved,

1    but I'll leave that up to you gentlemen and you can let me know
2    by tomorrow via letter.
3              MR. SMITH:  If it's all right with Mr. Lipsky --
4    actually, I forgot tomorrow's Friday.  If we could do it by
5    Tuesday?  If that's acceptable to plaintiff's counsel, then I
6    could certainly do that.
7              THE COURT:  Mr. Lipsky?
8              MR. LIPSKY:  That's fine, your Honor.
9              THE COURT:  Okay.  So by end of day Tuesday.
10             And what day is that, Mr. Gomez?
11             THE DEPUTY CLERK:  April 8th.
12             THE COURT:  April 8th the parties will let me know
13   whether there is agreement that we can proceed with the motion
14   to dismiss and that the statute is tolled.  And if not, the
15   parties should submit a proposed scheduling order for parallel
16   motions.  Okay?
17             MR. SMITH:  Do you want to do a briefing schedule on
18   the motion to dismiss now or would you like us to --
19             THE COURT:  Yes, we can do that now.  We can do that
20   now if you wish.
21             How much time do you need, Mr. Smith?
22             MR. SMITH:  Three weeks or so?
23             THE COURT:  Three weeks?  Okay.  Three weeks from
24   today will be the 24th.
25             MR. LIPSKY:  Your Honor, we're saying motions to

1    dismiss.  Is it a motion to dismiss or a motion for summary
2    judgment?  Because defendants have already filed their answer.
3               THE COURT:  I believe it will be either a motion on
4    the pleadings or a motion for summary judgment.
5               MR. SMITH:  It would be summary judgment.  But I guess
6    if they're going to be taking-- I'll need to meet and confer
7    with them.  If there's going to be discovery that he wants to
8    take on the issue, then he'll probably make a Rule 56
9    application for early discovery pending summary judgment.  But
10   our motion will be for summary judgment, Judge.
11              THE COURT:  Okay.  So the 24th.
12              And how much time do you want to respond, Mr. Lipsky?
13              MR. LIPSKY:  May I have 30 days, your Honor?
14              THE COURT:  Okay.  May 24.  Is that a weekday?
15              THE DEPUTY CLERK:  It's a Saturday.
16              THE COURT:  So May 26th.  And two weeks to reply?
17              MR. SMITH:  Sure.
18              THE DEPUTY CLERK:  June 9th.
19              THE COURT:  Okay.  So April 24, June.
20              MR. SMITH:  Then oral argument?
21              THE COURT:  I'll let you know if I want oral argument.
22   I don't typically take oral argument.
23              MR. SMITH:  If we don't want to toll the statute, then
24   we would write back to you and we'll set a whole new schedule
25   for everything.

E43BWALC                     Conference

1           THE COURT:  Correct.  Or likely we'll just put
2    Mr. Lipsky's motion on the same track.
3           MR. LIPSKY:  That's what I was going to ask, your
4    Honor, if this will be the dual track for both motions.
5           THE COURT:  Right.  Yes.  Okay.
6           MR. LIPSKY:  Thank you, your Honor.
7           THE COURT:  Anything further?
8           MR. LIPSKY:  Not for me.
9           MR. SMITH:  No.
10          (Adjourned)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25