UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
:
JEFFREY H. WALDEN, individually and on :
behalf of all other persons similarly situated, :
:
                Plaintiff, :
:
       - against - :         14 Civ. 112 (ER)
:
SANITATION SALVAGE CORP., ANDREW :
SQUITIERI, JOHN SQUITIERI, and :
STEVE SQUITIERI, jointly and severally, :
:
                Defendants. :
:
-------------------------------------------------------------x
:
KELVIN GARCIA, on behalf of himself and all :
others similarly situated, :
:
                Plaintiff, :
:
       - against - :         14 Civ. 7759 (ER)
:
SANITATION SALVAGE CORPORATION :
and STEVEN SQUITIERI, individually, :
:
                Defendants. :
:
-------------------------------------------------------------x

**OPINION AND ORDER**

RAMOS, D.J.:

       This is a consolidated putative collective and class action under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). Plaintiffs Jeffrey H. Walden ("Walden") and Kelvin Garcia ("Garcia," and collectively, "Plaintiffs") allege that their former employers, Sanitation Salvage Corp. ("Sanitation Salvage"), Andrew Squitieri, John Squitieri, and Steven Squitieri (collectively, "Defendants") failed to pay them certain overtime wages in

violation of the FLSA and the NYLL, and failed to comply with the NYLL's recordkeeping requirements.

On April 24, 2014, prior to the commencement of discovery, Defendants moved for summary judgment of Plaintiffs' claims, as well as attorney's fees and costs. In an Opinion and Order dated March 30, 2015, the Court: (1) granted Defendants' motion for summary judgment with respect to Garcia's FLSA claim without prejudice to replead with an appropriate plaintiff within thirty days of the date of the Order; (2) denied Defendants' motion for summary judgment without prejudice as against Walden; and (3) denied Defendants' request for attorney's fees and costs. Doc. 31 at 16.[1]  Thereafter, the parties engaged in discovery, after which time Defendants renewed their motion for summary judgment as to Walden's claims. Garcia's FLSA claim was never replead.[2]

For the reasons set forth below, Defendants' motion for summary judgment is GRANTED in part and DENIED in part.

## I.  BACKGROUND[3]

Defendant Sanitation Salvage is a New York corporation that is in the business of carrying and disposing garbage and cardboard from residential and commercial establishments throughout New York City and Westchester and Rockland Counties. Defendants' First Amended Local Rule 56.1 Statement of Material Facts ("Defs.' Am. 56.1") (Doc. 55) ¶¶ 1–6. The company ships the materials it collects to locations throughout the United States and abroad.

---

[1] References to "Doc." relate to documents filed in Walden's case, No. 14 Civ. 112.

[2] In the March 30, 2015 Opinion and Order, the Court warned that if Garcia's FLSA claim was not replead, "the Court [would] decline to exercise supplemental jurisdiction over the state law claims brought in Garcia's complaint and the case [would] be closed." Doc. 31 at 14 n.6. In accordance with that decision, the Court will direct the Clerk of the Court to close Garcia's case.

[3] The following facts are undisputed except where otherwise noted.

*Id.* ¶¶ 9–10.  It has over 7,000 customers and over 80 employees.  *Id.* ¶ 8.  The individual defendants own, operate, and/or control the company's day-to-day operations.  *See id.* ¶¶ 65–66.

Sanitation Salvage's garbage disposal fleet consists of over 17 "packer" trucks and 6 "roll off" trucks.  *Id.* ¶ 7.  Each packer truck is manned by a driver and at least one helper.  *Id.* ¶ 25.  Plaintiff Walden worked at Sanitation Salvage as a helper on a packer truck from 2011 to 2013.  *Id.* ¶ 17.  As a helper, Walden was primarily responsible for loading garbage onto the trucks.  *Id.* ¶ 27; Walden's Counterstatement of Material Facts Under Local Civil Rule 56.1 ("Walden's Counter-56.1") (Doc. 58) ¶ 27.

On January 8, 2014, Walden filed this action against Defendants, alleging that Defendants failed to pay him certain overtime wages in violation of the FLSA and the NYLL, and failed to comply with the NYLL's recordkeeping requirements.  Complaint ("Compl.") (Doc. 1) ¶¶ 60–85.  Defendants now move for summary judgment of Walden's FLSA claim on the basis that Walden is exempt from the FLSA's overtime provision.  Defendants also ask the Court to decline to exercise supplemental jurisdiction over Walden's NYLL claims, and they seek attorney's fees and costs.

## II.  LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might affect the outcome of the litigation under the governing law.  *Id.*  The party moving for summary judgment is responsible for demonstrating the absence of any genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).  However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise.  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).  The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts."  *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor."  *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986)).

### III. DISCUSSION

#### A. Walden's FLSA Claim

The FLSA requires that employees engaged in interstate commerce be paid "at a rate not less than one and one-half times the [employee's] regular rate" of pay for work in excess of forty hours in any workweek.  29 U.S.C. § 207(a).  However, Congress has exempted a broad range of employees from this rule.  *See id.* § 213.  These exemptions are "narrowly construed against the

employers seeking to assert them and their application [is] limited to those establishments plainly and unmistakably within their terms and spirit." *Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217, 222 (2d Cir. 2002) (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)). The burden of invoking any such exemption rests upon the employer. *Id.*

At issue in this case is the applicability of the so-called motor carrier exemption to the FLSA, 29 U.S.C. § 213(b)(1), which exempts from the FLSA's overtime provision any employee with respect to whom the Secretary of Transportation ("Secretary") has power to establish qualifications and maximum hours of service pursuant to the Motor Carrier Act ("MCA"), 49 U.S.C. § 31502. *See Bilyou*, 300 F.3d at 222–23. Whether the motor carrier exemption applies to an employee depends on the nature of both the employer's and the employee's activities. 29 C.F.R. § 782.2(a).[4]  <u>First</u>, the employer must be within the jurisdiction of the Secretary by virtue of operating as a "motor carrier," as defined by the MCA. *Id.*; *see also Dauphin v. Chestnut Ridge Transp., Inc.*, 544 F. Supp. 2d 266, 273 (S.D.N.Y. 2008). <u>Second</u>, the employee must be a "driver, driver's helper, loader, or mechanic" whose work directly affects the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the MCA. 29 C.F.R. § 782.2(b)(2); *see also Levinson v. Spector Motor Serv.*, 330 U.S. 649, 685 (1947); *Dauphin*, 544 F. Supp. 2d at 274. In making this second determination, the name given to the employee's position is not controlling; rather, it is the character of the activities involved in the employee's performance of his job that controls. *Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695, 707 (1947). "If not all of an employee's activities affect the safety of operations of motor vehicles in interstate

---

[4] "The Department of Labor's interpretive guidance regarding the motor carrier exemption, although not binding on this Court, is entitled to respect to the extent that it has the 'power to persuade.'" *Dauphin v. Chestnut Ridge Transp., Inc.*, 544 F. Supp. 2d 266, 273 n.2 (S.D.N.Y. 2008) (citations omitted).

commerce, a court must consider 'the character of the activities rather than the proportion of either the employee's time or his activities.'" *Williams v. Tri-State Biodiesel, L.L.C.*, No. 13 Civ. 5041 (GWG), 2015 WL 305362, at *5 (S.D.N.Y. Jan. 23, 2015) (quoting *Morris v. McComb*, 332 U.S. 422, 431–32 (1947)); *see also Fox v. Commonwealth Worldwide Chauffeured Transp. of NY, LLC*, 865 F. Supp. 2d 257, 266 (E.D.N.Y. 2012) ("What matters is the degree to which a worker's activities affects safety, not the amount of time the worker spends on that activity.").

The parties do not dispute that Sanitation Salvage is subject to the Secretary's jurisdiction as an interstate motor carrier. Doc. 31 at 8 n.2.[5] What is disputed is whether Walden qualifies as an employee whose work directly affected the safety of motor vehicle operation. When Defendants first moved for summary judgment in April 2014, the Court found it premature to decide this issue, given that the parties had not yet engaged in discovery. Doc. 31 at 10–13. Now that the parties have had an opportunity to take depositions, the matter is ripe for review.

Defendants argue that Walden qualifies for the exemption as a "loader." Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Defs.' Mem.") (Doc. 20) at 10–13. An employee is exempt as a loader if "he has responsibility when [the] motor vehicles are being loaded, for exercising judgment and discretion in planning and building a balanced load or in placing, distributing, or securing the pieces of freight in such a manner that the safe operation of the vehicles on the highways in interstate or foreign commerce will not be jeopardized." 29 C.F.R. § 782.5(a); *see also Qi Zhang v. Bally Produce, Inc.*, No. 12 Civ. 1045

---

[5] For that reason, the Court need not decide whether the items collected by Defendants' trucks qualify as "property" and whether Defendant operates its trucks in "interstate or foreign commerce," as those terms are defined by the MCA. *Cf. VanArtsdalen v. Deffenbaugh Indus., Inc.*, No. 09 Civ. 2030 (EFM), 2011 WL 1002027, at *2–4 (D. Kan. Mar. 18, 2011) (finding that trash is property for purposes of the MCA and that defendant was engaged in interstate commerce); *Graham v. Town & Country Disposal of W. Mo., Inc.*, 865 F. Supp. 2d 952, 956–59 (W.D. Mo. 2011) (same); *Veney v. John W. Clarke Inc.*, 28 F. Supp. 3d 435, 442–46 (D. Md. 2014) (declining to resolve whether trash is property in light of the fact that defendant also collected recyclables, and finding that defendant was not engaged in interstate commerce).

(FB) (JMA), 2013 WL 1729274, at *2 (E.D.N.Y. Apr. 22, 2013); *McBeth v. Gabrielli Truck Sales, Ltd.*, 768 F. Supp. 2d 383, 391 (E.D.N.Y. 2010). Defendants argue that Walden meets this criteria because, among other things, he exercised judgment and discretion in screening the garbage left for pickup. Defs.' Mem. at 12. The parties agree on the procedure Walden followed when deciding what to load into the truck: "If a load was potentially unsafe, Walden would notify the driver; the driver would contact their supervisor; their supervisor would decide whether they are to load a possibly unsafe item; the supervisor would communicate that decision to the driver; and the driver would communicate the supervisor's decision to Walden." Walden's Counter-56.1 ¶ 81.[6] However, Walden argues that because he did not have the "ultimate" authority to decide what to load into the truck, he cannot qualify as an exempt loader. Walden's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Walden's Opp'n Mem.") (Doc. 57) at 1–3, 13–14.

Three courts from other circuits have considered the motor carrier exemption in the context of garbage truck loaders like Walden: *Veney v. John W. Clarke Inc.*, 28 F. Supp. 3d 435 (D. Md. 2014); *Graham v. Town & Country Disposal of Western Missouri, Inc.*, 865 F. Supp. 2d 952 (W.D. Mo. 2011); and *VanArtsdalen v. Deffenbaugh Industries, Inc.*, No. 09 Civ. 2030 (EFM), 2011 WL 1002027 (D. Kan. Mar. 18, 2011). In all three cases, the courts found that the employees qualified as exempt loaders because they exercised judgment and discretion in a

---

[6] *See also* Declaration of Christopher A. Smith in Support of Defendants' Summary Judgment Motion ("Smith Decl.") (Doc. 54), Ex. A ("Walden Dep.") at 88:4–90:2 ("Q. Okay. If you saw something unsafe, it was your understanding, as a helper for Sanitation Salvage, that you should notify the driver? A. Yes. . . . Q. . . . Let's say you noticed that unsafe item. What was the procedure that Sanitation Salvage established regarding processing that item? . . . A. I would, like I said, go to my driver, let him know the container is – it got something hazardous. He would come check it. And if we're able to dump it, we dump it, because the boss said get everything. So that is what we would do, get everything. Q. Okay. But there were times when you notified the driver of an unsafe condition? A. Yes. Q. And the driver would then – it's your understanding that it was Sanitation Salvage's policy to require the driver to contact the supervisor regarding that? A. Yes. Q. And then the supervisor would make a decision as to whether or not to load it? A. Yes.").

manner that affected the safe operation of the garbage trucks. In *VanArtsdalen*, the plaintiff argued that he was not an exempt loader because his decision of whether to load a particular piece of trash was based solely on guidelines that his employer promulgated. 2011 WL 1002027, at *3. The court found the plaintiff's argument unpersuasive, stating:

> This is not a case where Plaintiff's driver or some other supervisor was walking next to him telling him that this piece of trash is acceptable, but this one is not; rather, Plaintiff was having to determine if the trash he encountered at each stop met [his employer's] standards and could be safely loaded. Thus, while it is true that Plaintiff was not free to determine what categories of trash would or would not be collected, he was nevertheless exercising his judgment and discretion when loading the truck.

*Id.*

In *Graham*, the plaintiffs testified to a variety of objects that were not to be loaded into the trucks, including tires, batteries, and gasoline. 865 F. Supp. 2d at 960. The court noted that many of these objects "pose safety hazards to the employees and the public" and thus found that "when Plaintiffs decided what items were to be picked up and placed in the trash trucks, they exercised their judgment and discretion in placing, distributing, or securing the trash in such a manner that the safe operation of the vehicles on the highways in interstate commerce would not be jeopardized." *Id.* The court rejected the plaintiffs' argument that their decisions not to pick up certain items were motivated by safety concerns at the landfill rather than concerns about safety on the highway, finding it "not reasonable to assume that a decision to avoid mixing flammable items such as gasoline with the rest of the trash in the truck would not have direct and important safety effects to drivers and pedestrians on the road." *Id.* at 961. Similarly, in *Veney*, the court had "no difficulty finding from the facts before it that Plaintiffs' activities affect[ed] the

safety of the operation," where the plaintiffs were "entrusted with an important responsibility not to pick up items that could be hazardous to the operation of the truck." 28 F. Supp. 3d at 442.[7]

The court finds these three cases to be persuasive and directly applicable here. At his deposition, Walden testified that he was responsible for bringing to the driver's attention any potentially unsafe items left for pickup. Walden Dep. at 87:1–90:2. Moreover, Walden was under specific instructions not to pick up certain items that pose safety hazards on the road, namely tires and red biohazard bags. *Id.* at 66:24–69:13.[8] Although Walden was not responsible for making the ultimate decisions as to whether or not to load these items into the truck, he nonetheless exercised judgment and discretion in deciding which potentially unsafe items to bring to the attention of his supervisor and in carrying out his employer's instructions with respect to potential safety hazards. Accordingly, the Court finds that "when [Walden] decided what items were to be picked up and placed in the trash trucks, [he] exercised [his] judgment and discretion in placing, distributing, or securing the trash in such a manner that the safe operation of the vehicles on the highways in interstate commerce would not be jeopardized." *Graham*, 865 F. Supp. 2d at 960. Walden is thus exempt from the FLSA's overtime provision as a loader.

Walden alternatively qualifies for the motor carrier exemption as a "driver's helper." A driver's helper is exempt if he is "required to ride on a motor vehicle when it is being operated in interstate or foreign commerce within the meaning of the Motor Carrier Act" and engages in

---

[7] The court denied the defendants' motion for summary judgment in *Veney* on the basis that they had failed to establish the motor carrier exemption's interstate commerce requirement. 28 F. Supp. 3d at 446.

[8] Walden maintains that he was only instructed not to load tires because the dump charges Sanitation Salvage approximately $50 per tire, and he was only instructed not to load red biohazard bags because the dump would not accept them. Walden's Opp'n Mem. at 3, 15–16. Walden thus argues that the instructions not to load these items "had nothing to do with the truck's or public's safety on the highways." *Id.* at 3. The Court disagrees. Regardless of whether Walden's instructions were motivated by financial concerns on the part of his employer, loading these items into the garbage truck would undoubtedly have "direct and important safety effects to drivers and pedestrians on the road." *Graham*, 865 F. Supp. 2d at 961.

9

activities that "directly affect the safety of operation of such motor vehicles." 29 C.F.R. § 782.4(a). Here, the parties do not dispute that:

- Walden participated in a pre-route safety inspection of the truck, which consisted of, among other things, checking the truck's tires, brake lights, and warning buzzer, Defs.' Am. 56.1 ¶¶ 28–30, 34;

- Walden helped to "continually monitor the safety of the trucks" by "inspecting the trucks for malfunctions," *id.* ¶ 38;

- Walden was "required to alert the driver if [he] determine[d] the driver may strike a person or object while backing the truck," *id.* ¶ 44;

- Walden "gave his driver hand signal assistance in backing the truck on narrow streets," *id.* ¶ 45;

- Walden would "press an emergency buzzer on the truck to alert the driver to any hazards," *id.* ¶ 46;

- Walden was "responsible for the safety of the other members of the crew by making sure those members [were] constantly wearing their high visibility clothing and reflective vests," *id.* ¶ 49;

- Walden assisted the driver in a post-route inspection of the truck and equipment, noting any damaged or missing equipment, *id.* ¶ 50; and

- Walden was responsible for reporting to his supervisors any safety issues reported by civilians, *id.* ¶ 51.

All of these activities directly affect the safety of operation of the garbage trucks. Accordingly, Walden is also exempt from the FLSA overtime provision as a driver's helper.

Since Walden is exempt from the FLSA overtime provision as a matter of law, his FLSA claim is dismissed with prejudice.

### B. Walden's NYLL Claims

Under 28 U.S.C. § 1367(c)(3), if the Court has dismissed all of the claims over which it has original jurisdiction, it may decline to exercise jurisdiction over any non-federal claims over which it could have exercised supplemental jurisdiction. Subject matter jurisdiction in the instant action is based on federal question jurisdiction rooted in claims brought under the FLSA.

28 U.S.C. § 1331.  Because no federal claim remains that is subject to a merits determination by this Court, it would be inappropriate to adjudicate Walden's state law claims.  *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."); *McGugan v. Aldana-Bernier*, No. 11 Civ. 342 (TLM), 2012 WL 1514777, at *8 (E.D.N.Y. Apr. 30, 2012) ("[W]hen all federal claims are eliminated in the early stages of litigation, the balance of factors generally favors declining to exercise pendent jurisdiction over remaining state law claims and dismissing them without prejudice."), *aff'd*, 752 F.3d 224 (2d Cir. 2014).  Therefore, Walden's NYLL claims are hereby dismissed without prejudice to repleading in state court.

### C.  Defendants' Request for Fees and Costs

Defendants request attorney's fees and costs on the ground that the instant action was commenced in bad faith.  Defs.' Mem. at 16.  Courts in this circuit have the power to award attorney's fees to a successful litigant when his opponent has commenced or conducted an action in bad faith, vexatiously, wantonly, or for oppressive reasons.  *Landmark Ventures, Inc. v. InSightec, Ltd.*, 63 F. Supp. 3d 343, 359 (S.D.N.Y. 2014) (quoting *Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329, 344 (2d Cir. 1986)).  However, the Second Circuit has declined to uphold awards under the bad-faith exception absent clear evidence that the challenged actions are entirely without color and are taken for reasons of harassment or delay or for other improper purposes.  *Id.* (quoting *Dow Chem. Pac. Ltd.*, 782 F.2d at 344).  Based on the record before the Court, there is no basis to conclude that Walden filed this action in bad faith.  Defendants' request for attorney's fees and costs is therefore denied.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED with respect to Walden's FLSA claim, but Defendants' motion for attorney's fees and costs is DENIED. The Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. The Clerk of the Court is respectfully directed to close the consolidated actions, Nos. 14 Civ. 112 and 14 Civ. 7759.

It is SO ORDERED.

Dated:   December 13, 2016
         New York, New York

_____
Edgardo Ramos, U.S.D.J.